## Warren Borough *versus* Daum.

73      433
19 SC °643

1. A borough council resolved to levy tax sufficient to pay each person who should enlist, a bounty not exceeding $300.   This was not an offer to pay a bounty to volunteers.

2. The resolution gave no right to any one to enlist and demand the bounty.

3. The plaintiff enlisted in Virginia in 1864 as a veteran; on the muster-roll his place of residence was stated to be "Warren, &c."   *Held*, that the Act of May 1st 1866, enacting that the place of residence named in the muster-rolls shall be considered the place of credit, did not create an obligation against Warren, if one did not exist before.

4. The re-enlistment of itself was not notice to the defendant.

5. To establish a contract by acceptance of a proposition, it must appear that the one making it was notified of the acceptance.

23 P. F. SMITH—28

[Warren Borough *v.* Daum.]

March 26th 1873. Before READ, C. J., AGNEW, SHARSWOOD and MERCUR, JJ. WILLIAMS, J., at Nisi Prius.

Error to the Court of Common Pleas of *Warren county :* Of January Term 1872, No. 208.

This was an action of assumpsit, brought January 24th 1871, by Andy Daum to the use of C. L. Douglass, against the borough of Warren.

The claim of the plaintiff was for the bounty of $300, offered by the borough of Warren for veterans enlisting in the United States service in the war of the rebellion, and credited to that borough.

The cause was tried December 12th 1871, before Vincent, J.

The plaintiff gave in evidence a resolution of the borough council, passed February 11th 1864, to levy a tax sufficient to pay " a bounty not exceeding $300 " to each person who should enlist to the credit of the borough of Warren :

Also, Resolution of February 13th, that the borough issue her bonds for $10,000 if necessary, subject to the condition that they should be a valid obligation against the borough upon the passage of an act of the legislature, authorizing the borough to provide for their redemption and repayment.

Also, certified copy of muster and descriptive roll of re-enlistments from the Adjutant General's Office at Harrisburg, viz. :

" Muster-in, bounty, advance-pay, and descriptive roll of a detachment of United States veteran volunteers, re-enlisted by Captain Nathaniel Payne, company " K," for the 12th Regiment of Pennsylvania cavalry volunteers, stationed at Martinsburg, Va., re-enlisted pursuant to general order 191, &c.

" Name, Andy Daum, rank, private, born Clarion county, Pennsylvania, age 21 years, occupation farmer, enlisted February 29th 1864, at Martinsburg, Va., by Captain George W. Henrie for three years,* * * mustered into service February 29th 1864, at Martinsburg, Va. * * *

" Date of first muster March 1st 1862. Residence, Warren, Warren county, Pennsylvania, Nineteenth district of Pennsylvania.

" Re-mustered as veteran volunteers under general orders 191, &c."

D. Titus testified : " I was major of the 12th cavalry during the rebellion, and commanded the regiment. In February 1864, I wrote to Judge Annett, burgess of Warren, asking whether the borough was paying bounties ; the judge informed me the borough was paying $300 bounty ; there was a strife for volunteers for various localities ; I wanted the Warren borough men to be credited to the borough ; I encouraged our men to enlist ; bounties were to be paid in bonds ; the fact that the borough was paying bounties was communicated to all the men ; my son also worked with the soldiers for same purpose ; I don't recollect talking with

[Warren Borough *v.* Daum.]

Daum particularly; he once lived in Warren; he was in company K; the soldiers in that company were mostly from Warren county."

For the defendant, the clerk of the borough council in 1864, testified that he had the whole charge of the enlistment matters of the councils; the evidence of enlistment and re-enlistment was furnished him; he never had any evidence of Daum's enlistment for the benefit of the borough; the quota was filled without him; he was never credited to the borough to the knowledge of witness; no personal application was ever made by Daum; witness had receipts from the provost marshal for all credits for the borough; no credit for a man named Daum.

The court charged:—

"The right of the plaintiff in this case to recover depends entirely upon whether or not a valid contract exists between him and the defendant.

"It is not denied that enlistment as a volunteer for a particular locality in consideration of a promise to pay bounty by that locality, raises an obligation to pay the bounty, if the volunteer was duly credited; but it is contended by the defendant that it ought not to pay, and is not obliged to pay, unless the volunteer was duly credited to it upon its quota, even if the re-enlistment was made upon its promise to pay. * * *

"[This evidence clearly shows that the defendant as early as February 11th 1864, offered a bounty to volunteers to fill its quota under the calls of the government for men.] The terms of payment of this bounty were not finally settled until the 22d of February 1864."

The judge, after recapitulating the evidence, proceeded :—

"[If you believe that Daum re-enlisted to the credit of the defendant, under the belief and in the consideration that if he did so he would receive a bounty of $300 from it, and that the re-enlistment was so made as to entitle the defendant to that credit, and that it failed to get that credit, if it did fail, by no neglect of Daum, but by that of the officers of the United States charged with such duties, we think the failure ought not to prevent the plaintiff's recovering in this suit.]

"After having re-enlisted, as the evidence shows he did, he could not change it without the consent of the military authorities of the United States, and having thus put it out of his power to get a bounty from another place, he ought not to be deprived of his bounty from the district for which he did re-enlist if the enlistment was on a legal consideration, such as we have stated, because somebody whose duty it was failed to give the proper credit for it.

"[There is nothing before us to show that it was the duty of Daum to give the defendant notice and procure the proper credit. So far as we know, notice from him would have been an entire

nullity, and the defendant would not have been obliged to give it any attention.]

"It is in evidence that other localities were seeking volunteers to fill their quotas and paying bounties in cash, and you may infer from Major Titus's evidence that the fact was known in his regiment. [In the absence of any proof that Daum re-enlisted for any other place, taken with that of his having enlisted to credit of defendant, if you so believe, we may fairly infer that he had some motive in so doing, and judging of his human nature by that of other human beings, we may infer that he did so for a bounty to be paid for by some locality.] In fact, the law of 1866 says he must be so understood, fairly construed, but his intention on this subject must have a direct connection with the offer of the bounty to enable him to recover in this suit."

The verdict was for the plaintiff for $440.15.

The defendant took out a writ of error and assigned the parts of the charge in brackets for error.

*Brown & Stone,* for plaintiff in error.—There was no contract between plaintiff and defendant; this was necessary for a recovery: Washington Co. *v.* Berwick, 6 P. F. Smith 466; Brecknock Sch. Dist. *v.* Frankhouser, 8 Id. 380. There must be reciprocal assent to a definite proposition: Story on Contracts 373. The resolution of February 11th 1864, was but preparation for an offer: Foulke *v.* West Bethlehem, 3 P. F. Smith 223. The party making a proposition must be notified of acceptance: Emerson *v.* Graff, 5 Casey 358; 2 Parsons on Contracts 669. The voluntary compliance with the terms offered does not bind the person offering: Story on Contracts 384; Johnston *v.* Fessler, 7 Watts 48. Daum should have informed the borough of his enlistment: Vyse *v.* Wakefield, 6 M. & W. 452; Blodgett *v.* Springfield, 43 Vermont 626.

*F. D. Reeves,* for defendant in error.—A contract is to be interpreted by the circumstances under which it is made: Phila. Ins. Co. *v.* American Ins. Co., 11 Harris 65; Mifflin *v.* Learn, 3 P. F. Smith 184.

The opinion of the court was delivered, May 17th 1873, by

Mercur, J.—The learned judge put this case upon the true ground when he said to the jury, "the right of the plaintiff to recover depends entirely upon whether or not a valid contract exists between him and the defendant." Such being the law of the case, the well recognised rules of evidence necessary to establish a contract, must be applied.

We are unable to discover in the resolution of 11th of February 1864, any evidence that the borough of Warren offered a bounty

[Warren Borough *v*. Daum.]

to volunteers. It merely declared that the authorities would levy a tax sufficient for that general purpose. It was an act between the borough authorities and the tax-payers only. It was no offer to volunteers. It is true, it contemplated that the fund should subsequently be used in procuring volunteers at such prices as might be agreed upon, not exceeding three hundred dollars. It gave no one any right to say, I will enlist, and you shall pay me three hundred dollars. That the authorities so understood it, is shown by the fact that upon each, the 13th and 22d of February 1864, they passed a resolution to issue bonds for the same purpose. The passage of these resolutions was the first step towards putting the borough in a condition to justify it in offering bounties. It was providing the funds in advance of their appropriation. The making of contracts with persons to enlist, is entirely a different matter. To hold that this resolution offered a bounty to volunteers, is to extend it beyond its true scope and meaning. It did not, as was said in Foulke *v*. West Bethlehem Township, 3 P. F. Smith 221, *ex proprio vigore*, impose a liability upon the borough to pay any bounty. The first assignment of error is therefore sustained.

The other assignments of error may be considered together.

It appears by the muster-roll that when Daum was mustered into service on the 29th February 1864, at Martinsburg, Va., he declared his residence to be "Warren, Warren county, Pennsylvania." There is no evidence that he, at the time of his re-enlistment, said or did anything indicating an intention to enlist to help fill the quota of the defendant, or to be credited thereto. The evidence is that he first gave notice of any such claim a short time before the commencement of this suit, which was in January 1871. It is true, the second section of the Act of May 1st 1866, Pamph. L. 114, provides that "the place of residence named in the re-enlistment and muster-in rolls, shall, in the absence of other evidence, be considered the place of credit." This act, passed more than two years after his re-enlistment, throws no light upon his actual intention at the time of said re-enlistment. If the transaction, at the time, lacked the ingredients essentially necessary to create the contract relation, this subsequent Act of Assembly could not create one which would be obligatory upon the parties.

The learned judge thought the jury, judging of Daum's human nature by that of other human beings, might infer that he re-enlisted for a bounty, to be paid by some locality, and in the absence of any evidence that he re-enlisted for any other place, they might infer he enlisted to the credit of the Borough of Warren. This is carrying the doctrine of presumption too far. It is building upon a too uncertain foundation. The result is, that the superstructure is as shadowy as the base upon which it rests. With much stronger probability, it might be said, that the reason-

[Warren Borough *v.* Daum.]

able and ordinary workings of the human mind would have induced him to have informed the defendant within less than six years, of some fact indicating a real or pretended claim.

The evidence shows that the borough authorities never made any contract with Daum personally; that he did not notify them that he would accept, or had accepted the general offer which they had made; they had no notice of his enlistment; they filled their quotas with other men, and never received any credit or allowance for Daum. The act of his re-enlistment, remote from the defendant below, did not carry any notice of itself. Upon general principles, when one seeks to establish a contract predicated of a general proposal made by the other party, he must show that the one making the proposal was duly notified of the acceptance thereof. Notice of this acceptance is necessary, even when a distinct proposition is made by one to another: Emerson *v.* Graff, 5 Casey 358. We see nothing in this case to take it out of the general rule: Washington County *v.* Berwick, 6 P. F. Smith 466; Brecknock School District *v.* Frankhouser, 8 Id. 380.

The errors are sustained.          Judgment reversed.