# Mason-Heflin Coal Co., Appellant, v. Currie et al.

*Constitutional law—Sales Act of May 19, 1915, P. L. 543.*

1. Section 4 of the Sales Act of May 19, 1915, P. L. 543, is constitutional.

*Sales—Contract—Statement of claim—Act of May 19, 1915, P. L. 543—Memorandum—Statutory requirements—Statute of limitations.*

2. The statement of claim in a suit upon a verbal contract for a sale in excess of $500, must set forth the facts showing a right to recover under section 4 of the Sales Act.

3. There is a vital distinction between cases where a claim was originally enforceable by suit, but recovery may have been lost by reason of the statute of limitations, and those where the claim never was enforceable unless statutory requirements were observed. Under the former the facts necessary to take the case out of the statute need not be set forth; under the latter they must be.

4. A written agreement with a third party which does not set forth or express an intent on the part of defendant to sell coal to plaintiff, or an admission that such a contract has been made, cannot be a note or memorandum in writing within the provision of section 4 of the Sales Act.

Argued March 23, 1921. Appeal, No. 361, Jan. T., 1921, by plaintiff, from order of C. P. No. 2, Phila. Co., June T., 1920, No. 3492, sustaining affidavit of defense in nature of demurrer, in case of Mason-Heflin Coal Co. v. Benjamin C. Currie and James H. Campbell, trading as Currie & Campbell. Before FRAZER, WALLING, SIMPSON, KEPHART, SADLER and SCHAFFER, JJ. Affirmed.

Affidavit of defense in nature of demurrer. Before STERN, J.

The opinion of the Supreme Court states the facts.

222 MASON-HEFLIN COAL CO., Appel., *v.* CURRIE.

The court made an order sustaining the affidavit of defense in nature of demurrer.   Plaintiff appealed.

*Error assigned* was above order, quoting it.

*Wm. Clarke Mason,* for appellant.

*D. Stuart Robinson,* for appellee.

OPINION BY MR. JUSTICE SIMPSON, April 11, 1921:

Plaintiff averred, in its statement of claim, that defendants verbally agreed to deliver to it 15,000 tons of coal; that they also made a contract with the Regal Coal Mining Company to deliver this coal to plaintiff (which contract is now claimed to be a sufficient memorandum under section 4 of the Sales Act of May 19, 1915, P. L. 543); and that defendants broke their agreement with plaintiff, whereby it suffered a loss of $78,750.   Defendants' affidavit of defense alleged the agreement with plaintiff was not enforceable because of the foregoing section of the Sales Act, and denied that their contract with the Regal Coal Company satisfied the requirements thereof.   Plaintiff ordered the case for a hearing upon the law point thus raised, the court below entered judgment for defendants, and plaintiff appeals, raising the three questions hereinafter stated.

(1st.)   Where a verbal contract is for a sale in excess of $500, must the statement of claim set forth the facts showing that the requirements of section 4 of the Sales Act have been complied with, or is this merely a matter for proof at the trial?   The section is as follows: "A contract to sell or a sale of any goods or choses in action of the value of five hundred dollars or upwards shall not be enforceable......unless the buyer shall accept part of the goods or choses in action so contracted to be sold or sold, and actually receive the same, or give something in earnest to bind the contract, or in part payment, or unless some note or memorandum in writing of the con-

tract or sale be signed by the party to be charged or his agent in that behalf."

It would, of course, be a waste of time to spend days or even minutes in a trial, only to find, at the end thereof, that there could be no recovery because of the provisions of the act; and, since it is easy to set forth the essential facts permitting recovery (if such there be), we will not add another count to the public's indictment of judicial proceedings because of the "law's delays." The purpose of a statement is to set forth facts which show a claim "enforceable" by action; and it necessarily fails of this purpose unless they are averred. There is a vital distinction between cases where the claim was originally enforceable by suit, but recovery thereof may or may not have been lost by a failure to bring it within the time prescribed by the statute of limitations; and those, like the present, where the claim never was enforceable unless the statutory requirements were observed. Under the former, the facts necessary to take the case out of the statute need not be set forth (Heath v. Page, 48 Pa. 130; Barclay v. Barclay, 206 Pa. 307); under the latter, which are in effect proceedings for specific performance of the contract (Herzberg v. Irwin, 92 Pa. 48; Murray v. Ellis, 112 Pa. 485; Black v. American International Corporation, 264 Pa. 260), they must be averred in order to show a recovery may be had under the statute: Hogle v. De Long Hook and Eye Co., 248 Pa. 471. Were the question res nova we would hesitate ere we decided not to so require in both classes of cases; we have, however, inherited the rule of lack of necessity in the former, and hence will follow it; but we have not inherited a duty to penalize the public by extending it.

(2d.) Was the agreement with the Regal Coal Mining Company a sufficient memorandum under the act? Upon this point we need only quote the following from the able opinion of Judge STERN in the court below:

"There is no allegation or contention on the part of the plaintiff that any of the goods contracted to be sold

were accepted or received by it, or that anything was given in earnest to bind the contract, or in part payment. The plaintiff avers, however, that the statement of claim sets forth a [sufficient] 'memorandum in writing' ......[consisting] of a sales contract to which the defendants and a corporation known as the Regal Coal Mining Company are parties [dated three months later than the contract in suit], wherein and whereby the latter agrees to sell to the defendants 15,000 tons of coal (the same quantity as the plaintiff alleges it agreed to purchase from the defendants). It is not thought, however, that this written contract can be held to be a writing evidencing the contract between the plaintiff and the defendants. It is true that no express form of contract is necessary in order to constitute a compliance with the statute of frauds. Any note or memorandum in writing indicative of the intent of the parties, and being sufficiently precise to enable one to ascertain the terms of the contract, and signed by the party to be charged, is sufficient. But the written contract in the present case is a contract between the defendants and a third party and is not indicative or expressive of any contract wherein or whereby the defendants agreed to sell coal to the plaintiff. Indeed, the terms of the alleged contract upon which the present suit is brought and the terms of the written contract [between defendants and the Regal Coal Mining Company] are wholly different. The price is different. There is in the one contract a more detailed specification of the grade of coal, and there are various terms (nine in number) set forth in the written contract which do not appear, nor are alleged to exist, in the contract between the parties to this suit. But in addition to this the essential point is that the written agreement nowhere sets forth or expresses either an intent on the part of the defendants to sell coal to the plaintiff or an admission that such a contract had been made. It is true that in the written agreement it is [stated] that the coal is to be shipped to 'Mason-Heflin Coal Company or

other parties'; but this, so far from indicating any agreement to ship to the plaintiff, on the contrary shows that it was to be entirely within the discretion of the defendants as to where the coal was to be shipped, since they were to be at liberty under this term of their contract to order the coal sent to any person to whom they might see fit to have it shipped. To say that the 'other parties' mentioned in the written agreement refers to assignees of the plaintiff, to be subsequently designated by the latter, is to attempt to read into the writing something which is not expressed therein. The court therefore concludes that [the contract between defendants and the Regal Coal Mining Company] does not constitute a 'note or memorandum in writing' which brings the contract sued upon within the terms of the section of the Sales Act above set forth."

(3d.) Is section 4 of the Sales Act unconstitutional? This also Judge STERN has conclusively answered, when he says: "In regard to the constitutionality of section 4, the plaintiff contends that this section is a special law changing the rules of evidence in judicial proceedings and the methods for the collection of debts, and therefore violates article III, section 7, of the Constitution of Pennsylvania. Assuming for the sake of argument, but not deciding, that the clauses of the Constitution referred to are involved at all, it cannot be held that section 4 of the Sales Act is special legislation within the meaning of the Constitution. The principles governing this subject have been so many times stated by the Supreme Court that no extended discussion would seem to be required. The Constitution does not prevent distinctions and classifications; it merely requires that the basis for classification must be reasonable and proper and founded upon a real and not merely an artificial distinction; if the distinction is genuine the courts cannot declare the classification void, though they may not consider the basis to be [wise]. The test is not wisdom, but good faith, in the classification: Com. v. Puder,

261 Pa. 129; Laplacca v. Phila. R. T. Co., 265 Pa. 304. In the present case there is manifest propriety in the provision that sale contracts involving only a small sum need not be in writing, whereas larger contracts are enforceable only if evidenced by a note or memorandum in writing. This distinction is based upon well-known customs and usages of trade. To require that the almost infinite number of trifling sales which are transacted every day must be in writing, would be to make almost impossible the carrying on of ordinary business of that kind. On the other hand, there is no reason why in the case of more important contracts of sale the parties should not be compelled to be sufficiently deliberate to reduce their agreements to writing. Once it be admitted that there is a valid reason for fixing an amount above which a note or memorandum in writing must exist, the exact point at which the line should be drawn is for the legislature and not for the courts."

To this it may be added, in answer to appellant's argument in this court, that the classification which the act makes is not a classification of coal contracts, but a classification of sales of personal property generally, a subject which could hardly be more general and more needing of classification, if this is ever to be permitted. Its contention is in substance, therefore, that contracts of sale cannot be classified for the purpose of legislation, even as between sales of realty and sales of personalty, notwithstanding the fact that this latter distinction has been recognized in legislation for centuries.

The judgment of the court below is affirmed.